## LOWELL *vs.* REDING.

Where one of two joint promisees in a negotiable note, having it in his possession, was requested by the other to sell it and apply the proceeds to their common benefit, and he sold it accordingly ; but the other refused to indorse it, being called upon for that purpose ; after which the seller indorsed it in their joint names ;—it was held that the purchaser could not maintain an action on the note as indorsee, the authority of the seller being revoked by the refusal.

THIS was an action of *assumpsit,* by the indorsee of a promissory note, made by the defendant, and payable to *Moses Rines* and *Levi Taylor,* or their order ; and it came up by exceptions taken by the plaintiff to the opinion of *Whitman C. J.* who ordered a nonsuit in the court below. The question was, whether the note

had been legally transferred to the plaintiff. It appeared that *Rines* and *Taylor* had formerly become the sureties of one *Austin* in a promissory note which he gave for a yoke of oxen; that the oxen were put into the hands of *Rines* for indemnity against his surety-ship; that *Austin* afterwards died, and the oxen became the prop-erty of *Rines* and *Taylor*, to pay the note; one of which oxen *Rines* sold to the defendant, *Reding*, taking therefor the note sued in the present action; which note was always kept by *Rines.* When *Rines* was afterwards called upon to pay an execution issued against him and *Taylor* for *Austin's* debt, he applied to *Taylor* for contribution; but the latter, being unable to assist him, requested him to sell *Reding's* note, and apply the proceeds to pay his part of the execution, as far as they would go. *Rines* informed *Reding* of this, and told him that the note was his for this purpose; to which *Reding* made no objection, but promised *Rines* to pay the note to him. Afterwards, being again called upon for payment by the of-ficer who held the execution, *Rines* sold the note to the plaintiff. They both then applied to *Taylor* to place his name on the back of the note, which he promised to do; but afterwards, on the same day, refused. While the parties were together, *Reding* joined them, and said that he had paid the note to *Taylor*; adding that he was about to indorse the amount on a note he held against *Tay-lor;* who thereupon again refused to indorse it to the plaintiff. Subsequently, on the same day, *Rines*, who paid the full amount of the execution, indorsed the note to the plaintiff, in his own name and that of *Taylor*, acting as the attorney of the latter.

Upon this evidence, *Whitman C. J.* was of opinion that *Rines* had not sufficient authority to indorse the note in *Taylor's* name, to the plaintiff; whom he therefore nonsuited.

The question was briefly spoken to, by *Greenleaf*, for the plain-tiff, and *Downes*, for the defendant; and the opinion of the Court was delivered as follows, by

PARRIS J. The case finds that the oxen, for which the note declared on was given, were the property of *Rines* and *Taylor*.—

Lowell *v.* Reding.

This must have been well understood by the former, for he took the note payable to *Taylor* as well as himself. Both were, therefore, equally interested in the property, and neither could transfer it without special authority from the other. *Rines* undertook to sell it, and, by indorsement, to transfer *Taylor's* interest to the purchaser; and the question is, was he authorized so to do?

As owners of this property they were not partners, and consequently could not bind each other as such. They were owners in common, each having an equal interest and equal rights, and neither having the power to divest the other of his property by transfer, unless specially authorized.

The defendant promised to pay them or their order; and the plaintiff, claiming as indorsee, must show that the payees have ordered the amount due on the note to be paid to him. There was nothing in the appearance of the note indicating a partnership, or that the property could be legally transferred in any other manner than by the joint order or indorsement of the payees. *Carvick v. Vickery, Doug.* 653.

But it is argued that *Rines* had a power coupled with an interest, and that such a power is not revocable. It is true he had been previously directed by *Taylor* to sell the note, and apply the proceeds towards paying the execution against them both; but *Rines* did not thereby assume to relieve *Taylor* from the execution. It still remained good against him, and for aught that appears, he was then liable to pay its full amount, and continued so liable up to the time when he was requested to indorse the note, for it is not found that *Rines* had then paid any part of the execution. It does not, therefore, appear that he became the owner of *Taylor's* interest in the note, either by paying or promising to pay any thing for it, or by relieving or promising to relieve *Taylor* from his liability on the execution.

If *Rines* was clothed with any power as agent, it was determinable at the will of his principal. It might be a power to transfer the interest, as a chose in action, without endorsement. Whether it was or was not sufficient for that purpose we are not called upon to

decide. It might have been sufficient to authorise *Rines* to make use of *Taylor's* name, and if executed before revocation might have been binding on *Taylor*. Such, however, neither *Rines* nor the plaintiff considered it, for they both resorted to *Taylor* to procure his endorsement, and it was not until after he had refused that *Rines* pretended to act in his name.

If *Rines* was authorised to endorse the note for *Taylor* and if the plaintiff so understood it, why did they call on *Taylor* to do it? Why did not the agent endorse the note in behalf of his principal? The inference is that he did not consider himself authorised; and if he was, his authority ceased on the revocation by *Taylor*, and whatever the agent attempted to do subsequently in *Taylor's* name was clearly unauthorised.

We are of opinion that the decision of the court below "that *Rines* had not authority to endorse the note at the time of the endorsement" was correct, and the exceptions are accordingly overruled.